Matter of Cheema (2024 NY Slip Op 04316)

Matter of Cheema

2024 NY Slip Op 04316

Decided on August 28, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 28, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
COLLEEN D. DUFFY
BETSY BARROS
FRANCESCA E. CONNOLLY
LINDA CHRISTOPHER, JJ.

2020-04643

[*1]In the Matter of Zahra Mushtaq Cheema, a disbarred attorney. Grievance Committee for the Tenth Judicial District, petitioner; Zahra Mushtaq Cheema, respondent. (Attorney Registration No. 5316609) DECISION & ORDER Motion by the respondent to vacate an opinion and order of this Court dated December 30, 2020, which disbarred her upon her default in answering a verified petition dated June 12, 2020, and to reopen the proceedings and declare the respondent's verified answer dated December 31, 2020, timely served and filed, nunc pro tunc. By decision and order on motion of this Court dated July 15, 2022, the motion was granted to the extent that the proceeding was reopened and the verified answer dated December 31, 2020, was deemed timely served and filed, nunc pro tunc, the parties were directed to proceed with the disciplinary proceeding upon the charges set forth in the verified petition dated June 12, 2020, the matter was referred to the Honorable Ralph T. Gazzillo, as Special Referee, to hear and report on the charges set forth in the verified petition, and the motion was otherwise held in abeyance in the interim. Upon the papers filed in support of the motion and the papers filed in opposition thereto, and upon the report of the Special Referee dated November 25, 2022, it is ORDERED that the portion of the motion previously held in abeyance is granted to the extent that the opinion and order of this Court dated December 30, 2020, is recalled and vacated, and the following opinion and order is substituted therefor: DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. By opinion and order dated December 30, 2020, the respondent was disbarred by this Court upon her default in answering the petition of charges. By decision and order on motion of this Court dated July 15, 2022, inter alia, the disciplinary proceeding was reopened, and the verified answer dated December 31, 2020, was deemed timely served and filed, nunc pro tunc. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on February 4, 2015. Catherine A. Sheridan, Hauppauge, NY (Michele Filosa of counsel), for petitioner. Foley Griffin LLP, Garden City, NY (Thomas J. Foley of counsel), for respondent. PER CURIAM.

The Grievance Committee for the Tenth Judicial District commenced a formal disciplinary proceeding against the respondent by serving and filing a notice of petition dated June 16, 2020, and a verified petition dated June 12, 2020. By opinion and order dated December 30, 2020, the Grievance Committee's motion to deem the charges in the petition as established based upon her default was granted and the respondent was disbarred, effective immediately (Matter of Cheema, 192 AD3d 88). The respondent subsequently moved to vacate the order of disbarment, and to reopen the proceedings and declare the respondent's verified answer dated December 31, 2020, timely served and filed, nunc pro tunc. By decision and order on motion of this Court dated July 15, 2022, the respondent's motion, was granted to the extent that the proceeding was reopened and the verified answer dated December 31, 2020, was deemed timely served and filed, nunc pro tunc. The matter was referred to the Honorable Ralph T. Gazzillo, as Special Referee, to hear and report. After a hearing on October 14, 2022, the Special Referee filed a report dated November 25, 2022, sustaining all charges. The Grievance Committee now moves to confirm the report of the Special Referee, and impose such discipline upon the respondent as the Court deems just and proper. The respondent, through her attorney, does not oppose the motion to confirm, but submits that a public censure would be the appropriate sanction.
Based upon the totality of circumstances, we find that the respondent's conduct warrants her suspension from the practice of law for a period of five years, effective immediately. 
The Petition and Answer
The verified petition contains eight charges of professional misconduct alleging, inter alia, that the respondent neglected client matters, failed to cooperate with the Grievance Committee's investigations, and misused her escrow account. By stipulation of the parties, executed on September 13, 2022, the petition was amended.
Charges one, two, and three, as amended, are based on the same factual allegations:
The Sanchez Complaint
In May 2017, Christopher Sanchez retained the respondent to handle immigration matters for himself and his wife, Barbara V. Torres. In or about July 2017, the respondent filed an Application for Employment Authorization on Torres's behalf with the United States Citizenship and Immigration Services (hereinafter USCIS). In or about August 2017, USCIS rejected Torres's application because it had been submitted with an incorrect payment amount. In or about February 2018, the respondent re-filed the Torres application, which was rejected again in or about March 2018 for having an incorrect payment amount, among other reasons. The respondent did not file a corrected application with USCIS thereafter on behalf of Torres.
The Cipriano Complaint
In or about 2018, Rusana Cipriano retained the respondent to represent her in an uncontested divorce action and in a citizenship matter. The respondent neither commenced the divorce action nor filed a citizenship application on Cipriano's behalf. The respondent did not promptly respond to Cipriano's requests for information about her legal matters. On April 25, 2019, Cipriano obtained a fee-dispute arbitration award against the respondent in the sum of $3,306.25. The respondent had not satisfied the arbitration award as of the date of the verified petition.
The Canizales Complaint
In or about October 2018, Christina Canizales and her husband, Andres Narciso Grullan Bencosme, retained the respondent to file an immigration application on Bencosme's behalf. The respondent was paid the sum of $4,260, representing the legal and filing fees. The respondent did not file an application and did not promptly respond to Canizales's requests for information about the immigration matter.
The Gayle Complaint
In or about July 2018, Marlan N. Gayle retained the respondent to handle his citizenship application. The respondent did not file a citizenship application on Gayle's behalf and did not promptly respond to his requests for information about his case. By letter to the respondent dated December 17, 2018, Gayle's new attorney, Marsha S. Whyte, requested a full refund of the $1,525 that Gayle had paid the respondent. The respondent did not respond to Whyte's request for a refund.
The Gomez Complaint
In or about July 2018, Luis R. Gomez retained the respondent to handle his [*2]citizenship application. The respondent did not file a citizenship application on Gomez's behalf and did not respond to his requests for information about his case. By letter to the respondent dated December 17, 2018, Gomez's new attorney, Marsha S. Whyte, requested a full refund of the $1,925 that Gomez paid the respondent. The respondent did not respond to Whyte's request for a refund.
The Qureshi Complaint
In or about August 2017, Omar Qureshi retained the respondent to represent his wife, Sabreen Sohail, in an immigration matter. The respondent did not file an immigration application on Sohail's behalf and did not promptly respond to Qureshi's requests for information about the case. On or about June 13, 2019, Qureshi obtained a small-claims judgment against the respondent in the District Court, Nassau County in the sum of $3,718.30. As of the date of the petition, the respondent had not satisfied the judgment.
Based on the foregoing, charge one alleges that the respondent engaged in a pattern of neglecting client's legal matters, in violation of rule 1.3(b) of the Rules of Professional Conduct (22 NYCRR 1200.0). Charge two alleges that the respondent engaged in a pattern of failing to keep her clients informed about the status of their matters, in violation of rule 1.4(a)(3) of the Rules of Professional Conduct. Charge three alleges that the respondent engaged in a pattern of failing to comply with her clients' reasonable requests for information, in violation of rule 1.4(a)(4) of the Rules of Professional Conduct.
Charge four alleges that the respondent engaged in conduct prejudicial to the administration of justice by failing to cooperate with the Grievance Committee in 10 disciplinary investigations discussed below, in violation of rule 8.4(d) of the Rules of Professional Conduct.
The Cipriano and Canizales Complaints
By letter from the Grievance Committee dated February 5, 2019, the respondent was informed of the Cipriano complaint and was requested to submit a written answer to the complaint within 10 days of receipt. By letter dated March 4, 2019, sent via certified mail, return receipt requested (hereinafter CMRRR), the Grievance Committee again requested that the respondent submit a written answer within 10 days. A signed return receipt card was returned to the Grievance Committee, but the respondent failed to submit a written answer or request additional time to do so.
By letter from the Grievance Committee dated February 25, 2019, the respondent was informed of the Canizales complaint and was requested to submit a written answer to the complaint within 10 days of receipt. By letter dated March 20, 2019, sent via CMRRR, the Grievance Committee again requested that the respondent submit a written answer within 10 days of receipt. A signed return receipt card was returned to the Grievance Committee, but the respondent failed to submit a written answer or request additional time to do so.
By letters dated April 8, 2019, sent via CMRRR, the Grievance Committee demanded that the respondent submit written answers to the Cipriano and Canizales complaints, along with an explanation for her failure to cooperate with the Grievance Committee's investigations. Two separate return receipt cards indicated that the April 8, 2019 letters were delivered on April 10, 2019, but the respondent failed to submit written answers or request additional time to do so.
On May 23, 2019, the respondent called the Grievance Committee and asked that all correspondence be resent to her home address. By letters dated June 5, 2019, the Grievance Committee sent its prior correspondence for the Cipriano and Canizales complaints to the respondent's home address and again requested written answers to the complaints within 10 days of receipt. The respondent submitted her answers on or about June 25, 2019. By letters dated August 21, 2019, sent via CMRRR to the respondent's home address, the Grievance Committee asked the respondent to provide additional information relating to the Cipriano and Canizales complaints. The return receipt cards for the August 21, 2019 letters indicated that both letters were delivered on August 23, 2019, but the respondent failed to submit her supplemental responses.
The Gayle and Gomez Complaints
By letters from the Grievance Committee dated April 19, 2019, the respondent was informed of the Gayle and Gomez complaints and was requested to submit written answers to the complaints within 10 days of receipt. By letters dated May 20, 2019, sent via CMRRR, the Grievance Committee again requested that respondent submit a written answer within 10 days of receipt. The signed return receipt cards indicated that both of the May 20, 2019 letters were delivered on May 22, 2019.
On May 23, 2019, the respondent called the Grievance Committee and asked that all correspondence be resent to her home address. By letters dated June 5, 2019, the Grievance Committee sent its prior correspondence for the Gayle and Gomez complaints to the respondent's home address and requested written answers to the complaints within 10 days of receipt. The respondent submitted her answers on or about June 25, 2019.
By letter dated July 12, 2019, the Grievance Committee forwarded a copy of the reply submitted by Gomez and requested that the respondent submit a written response to the reply within 10 days of receipt. The respondent failed to do so.
By letter dated July 24, 2019, the Grievance Committee forwarded a copy of the reply submitted by Gayle and requested that the respondent submit a written response to the reply within 10 days of receipt. The respondent failed to do so.
By letters dated August 21, 2019, sent via first class mail and CMRRR to the respondent's home address, the Grievance Committee again requested that the respondent submit her responses to Gomez's and Gayle's replies. The return receipt cards for both letters indicated that both of the August 19, 2019 letters were delivered on August 23, 2019, but the respondent failed to submit her responses.
Sua Sponte Investigation No. 1
By letter dated June 12, 2019, sent to the respondent's home address, the Grievance Committee informed the respondent that a sua sponte investigation had been commenced against her based on a dishonored check report received from the Lawyers' Fund for Client Protection. The June 12, 2019 letter requested that the respondent submit a written answer and provide specific bank and bookkeeping records within 20 days of receipt. On June 24, 2019, the respondent was hand delivered the June 12, 2019 letter, but she failed to respond to the Grievance Committee or otherwise request additional time to do so.
By letter dated August 21, 2019, sent via first class mail and CMRRR to the respondent's home address, the Grievance Committee again asked the respondent to submit her answer to the sua sponte investigation and provide her bookkeeping records within 10 days of receipt. The return receipt card indicated that the letters were delivered on August 23, 2019, but the respondent failed to submit her response.
The Qureshi and Martinez Complaints
By letter from the Grievance Committee dated June 25, 2019, which was hand delivered, the respondent was informed of the Qureshi complaint and was requested to submit a written answer to the complaint within 10 days of receipt.
By letter from the Grievance Committee dated July 17, 2019, again hand delivered, the respondent was informed that Nivia Martinez had filed a complaint against the respondent alleging, inter alia, neglect. The respondent was requested to submit a written answer to the complaint within 10 days of receipt.
By letters dated August 21, 2019, sent via first class mail and CMRRR to her home address, the Grievance Committee again asked the respondent to submit her answers to the Qureshi and Martinez complaints within 10 days of receipt. The return receipt cards for both letters indicated that the August 21, 2019 letters were delivered on August 23, 2019, but the respondent failed to submit her responses.
Sua Sponte Investigation No. 2
By letter dated July 17, 2019, sent via hand delivery, the Grievance Committee informed the respondent that another sua sponte investigation had been commenced against her based on a dishonored check report received from the Lawyers' Fund for Client Protection. The July 17, 2019 letter requested that the respondent submit a written answer and provide specific bank and bookkeeping records within 20 days of receipt.
By letter dated August 21, 2019, sent via first class mail and CMRRR to the respondent's home address, the Grievance Committee again asked the respondent to submit an answer to the second sua sponte investigation and to produce the previously requested bookkeeping records within 10 days of receipt. The return receipt card indicated that the August 21, 2019 letter was delivered on August 23, 2019, but the respondent failed to submit her response or provide the requested bank and bookkeeping records.
The Sanchez Complaint
By letter from the Grievance Comitteee dated August 21, 2019, sent via first class mail and CMRRR to her home address, the respondent was informed of the Sanchez complaint and was requested to submit a written answer to the complaint within 10 days of receipt. The return receipt card indicated that the August 21, 2019 letter was delivered on August 23, 2019, but the respondent failed to submit an answer.
On October 8, 2019, the respondent was personally served with a judicial subpoena directing her appearance at the Grievance Committee's office on November 21, 2019, for an examination under oath (hereinafter EUO) concerning the nine investigations indicated above. On October 8, 2019, the respondent called the Grievance Committee and stated that she would provide the information requested for all nine matters by October 18, 2019. In a letter to the Grievance Committee dated October 24, 2019, the respondent, inter alia, sought a two week extension to submit her responses. The request was granted with a new due date of November 8, 2019. The respondent failed to submit the responses until November 12, 2019. On November 21, 2019, the respondent failed to appear for her EUO.
The Rivas Complaint
By letter from the Grievance Committee dated January 2, 2020, the respondent was informed of a complaint filed against her by Jairo R. Rivas alleging, inter alia, neglect. The letter requested that the respondent submit a written answer to the complaint within 10 days of receipt. By letter dated January 21, 2020, sent via CMRRR, the respondent again was asked to submit a written answer to the Rivas complaint within 10 days. The return receipt card indicated that the letter was delivered on January 24, 2020, but the respondent failed to submit her response.
Charge five through eight allege that the respondent engaged in conduct that adversely reflects on her fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct.
Charge five alleges that the respondent exercised a lack of candor with the Grievance Committee. Charge six alleges that the respondent failed to remit funds due to her clients or former clients. In addition to the facts stated in charge one, on November 13, 2019, the respondent informed the Grievance Committee by telephone that she had mailed the following checks on November 12, 2019: (1) to Cipriano to satisfy the arbitration award obtained by Cipriano; (2) a full refund to Gayle; (3) a full refund to Gomez; and (4) to Qureshi to satisfy the small-claims judgment issued against the respondent. At the time of the petition, no payments were made to any of these clients.
Charge seven alleges that the respondent improperly used her escrow account. At all relevant times, the respondent maintained an attorney trust account titled "Cheema and Associates, P.C./Attorney Trust Account/IOLA" at Chase Bank. On January 1, 2019, the balance in the trust account was $21.17. On or about January 31, 2019, the respondent wired personal funds in the sum of $3,280 into the trust account. Between in or about February 2019 and April 2019, the respondent disbursed a total of $895.34 from the trust account for operating expenses on five separate dates to pay rent and "business transaction[s]." In April 2019, the respondent deposited personal funds in the sum of $3,203 into the trust account on three separate dates.
Charge eight alleges that based upon the misconduct described above, the respondent engaged in conduct that adversely reflects on her fitness as a lawyer.
In her verified answer dated December 31, 2020, the respondent essentially denied all of the charges and factual specifications in the verified petition. The respondent also repeatedly misrepresented that she was "ready and willing" to appear for her EUO, but contended that she had been informed by staff counsel for the Grievance Committee that her appearance was no longer necessary because she had submitted written responses to the complaints. Later, in the stipulation amending the petition, the respondent admitted to all of the factual specifications in the amended petition, and the parties agreed that the only issues in dispute were the conclusions of law.
The Hearing and Hearing Record
The Grievance Committee submitted 45 exhibits into evidence, including 42 letters that were sent to the respondent during the course of its investigations. The respondent testified on her own behalf, and submitted the testimony of one character witness and two character reference letters. The respondent also submitted a letter from a psychotherapist, who stated that between September 2018 to March 2020, she had met with the respondent "intermittently" to address the respondent's grief of losing her father and the verbal and emotional abuse of the respondent by her remaining family members.
The respondent testified that she started her legal career helping another attorney build his law firm. She later was the subject of a New York Times article about her job search efforts while wearing a hijab, which generated world-wide publicity for her. The respondent then started her own law firm, Cheema & Associates, PC, in 2015, the year she was admitted. The respondent initially had two paralegals and two attorneys working for her. After the respondent's father died, she was not in the office as frequently and she took in fewer cases. These changes reduced her income, so the respondent let go of all her employees. The respondent was not going to her office to work, and she said she became less prompt and less thorough. Nevertheless, when a travel ban was implemented by the Trump administration, the respondent went to the airport to help asylum seekers. According to the respondent, the Yemeni community was hit particularly hard, and she worked with another person to start the Yemeni-American Merchants Association (hereinafter YAMA). The respondent became the supervising attorney for YAMA on a pro bono basis, devoting approximately 8 to 10 hours a week to YAMA.
The respondent testified that she also had a sister who was mentally ill and that caring for her sister impacted the respondent's practice. According to the respondent, her parents were not providing proper medical care for her sister and they refused to commit the sister to a psychiatric hospital despite her dangerous episodes. The respondent testified that she was constantly exhausted and it became difficult for her to go work at her office. The respondent said that she also lost her drive and motivation after her father died. About that time, the respondent's family was engaged in several lawsuits over the family business in the United States and Pakistan, and the respondent's family pressured her to handle the lawsuits despite her inexperience in practicing business law.
In September 2018, the respondent began seeing a therapist and also went to New Horizons for treatment by a psychiatrist and a therapist. She testified that she was diagnosed with major depressive disorder and anxiety, but she had no documentation because New Horizons did not provide the paperwork to her on time. The respondent stopped all her treatments in 2020, and she has not since resumed any treatments.
Regarding the fee dispute arbitration award in the sum of $3,306.25 that was owed to client Cipriano, the respondent testified that she paid the award to Cipriano, but not until October 13, 2022, the day before the hearing, and more than three years after the award was issued. Regarding the civil judgment in the sum of $3,718.30 awarded to client Qureshi, the respondent testified that she paid the judgment in September 2020, and provided proof that she had issued Qureshi a check in ths sum of $5,000. In September 2020, the respondent also made refunds to clients Gayle and Gomez.
Regarding charge seven alleging improper use of her escrow account, the respondent testified that she "ran out of business checks" at the office and when the rent was due. The respondent did not have time to run home to obtain additional business checks, so she deposited personal funds into the trust account and paid rent in February 2019 and March 2019 using trust account checks. The respondent admitted that this was improper.
The respondent further testified that she did not submit her answers to the numerous complaints filed with the Grievance Committee because she was putting too much pressure on herself to provide a good response to the complaints due to the fact that she "cared probably beyond reason."
The respondent testified that if she were reinstated as an attorney, she would like to practice trusts and estates law and leave the immigration field. The respondent had also explored becoming a certified financial planner as an alternative. The respondent stated that she felt "bad" that she had let her clients down and that she should be readmitted to the Bar because she is "more cautious now."
During cross-examination, the respondent admitted that despite being aware for years of the funds owed to her clients, she did not provide refunds until after the Grievance Committee served her with charges.
The hearing record indicates on November 20, 2019, the day before the respondent's EUO, a voicemail message was left on the respondent's cellphone informing her that she was expected to appear for her EUO at 10:00 a.m. on November 21, 2019. This contradicts the respondent's statements in her verified answer that she was informed by staff counsel for the Grievance Committee that her appearance at the EUO was no longer necessary. The hearing record [*3]also indicates that the respondent repeatedly misrepresented the status of the immigration applications to her clients. The respondent even provided a fake mail tracking number to a client for an immigration application that the respondent purportedly had filed on behalf of that client when the respondent had taken no action on the application. When the clients asked for a refund or the return of their documents, the respondent would schedule appointments at her office and either cancel at the last minute or fail to show up, making the clients wait for hours. For two clients, the respondent threatened to report them to the police after she accused those clients of making threats of physical harm when the respondent was not at her office.
The Special Referee's Report
In a report dated November 25, 2022, the Special Referee sustained all eight charges of professional misconduct. While he found the respondent "sincere, remorseful, and credible," the Special Referee noted that the respondent also had previously "lied" to the Grievance Committee during its investigations, as admitted by the respondent in charge five.
In mitigation, the Special Referee considered that the respondent had admitted to the factual allegations of the petition, which was a positive step towards rehabilitation, although she failed to cooperate with the Grievance Committee's investigation. The Special Referee noted that the respondent's pro bono services and the stress of her chaotic family life were significant mitigating circumstances.
Nevertheless, the Special Referee questioned the respondent's judgment. First, in the midst of the personal distractions, the Special Referee questioned why the respondent did not substantially and aggressively reduce her practice and client base. The respondent's neglect started as early as 2017. Yet, the respondent continued to take on new clients through 2019. Rather than fulfill her existing obligations to her retained clients and to her family, the respondent took on the additional burden of pro bono activities.
The respondent also showed poor judgment by using escrow checks to pay personal expenses for two months because she ran out of business checks. The Special Referee noted that the respondent could have ordered appropriate checks or paid her personal expenses in cash or by money order.
The Special Referee found the respondent's argument that no client suffered any financial loss without merit since the respondent failed to repay her clients for years and did so only after she was charged, with one payment made the day before the hearing. Further demonstrating her poor judgment, the respondent did not address her responsibilities to her clients and to the Grievance Committee until she was disbarred.
Lastly, while the respondent argued that she had no disciplinary history, the Special Referee noted that she was admitted to practice in February 2015, her misconduct began a few years thereafter, and the respondent was disbarred before the sixth anniversary of her admittance to the Bar.
The Grievance Committee moves to confirm the report of the Special Referee sustaining all charges of professional misconduct, and impose such discipline upon the respondent as the Court deems just and proper. The respondent submits an affirmation in reply arguing that due to the "upheaval in immigration laws" while she was dealing with significant personal stress, nothing greater than public censure was warranted. The respondent further submits that "the facts [ ] clearly demonstrate that [her] actions were not motivated by dishonesty."
Findings and Conclusion
In view of the evidence adduced at the hearing, we find that the Special Referee properly sustained all eight charges in the petition. Accordingly, the Grievance Committee's motion to confirm the report of the Special Referee is granted.
In determining an appropriate measure of discipline, despite the character evidence submitted, the respondent repeatedly made false representations to her clients and throughout this disciplinary process. Although the respondent touts her pro bono work with the immigrant community, her misconduct alarmingly affected particularly vulnerable clients who relied on her to provide the stability to remain in this country.
Under the totality of the circumstances, we find that a five-year suspension is warranted. 
 
DILLON, J.P., DUFFY, BARROS, CONNOLLY and CHRISTOPHER, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Zahra Mushtaq Cheema, is suspended from the practice of law for a period of five years, effective immediately, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than February 28, 2029. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension, she (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted herself; and it is further,
ORDERED that the respondent, Zahra Mushtaq Cheema, shall comply with this Court's rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, the respondent, Zahra Mushtaq Cheema, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Zahra Mushtaq Cheema, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court